THE COMMISSIONERS OF THE BANK OF ORLEANS *v.* ANDREW HODGE.

A *fi. fa.* having been been issued on a judgment ordering mortgaged property, consisting of a plantation and slaves, to be sold to satisfy the claim of the mortgagee, the property was adjudicated to a third person, for a certain sum in cash sufficient to satisfy the execution. The *fi. fa.* was returned, and the return showed, that the purchaser had not complied with the conditions of the sale; but he was put in possession of the property, with the assent of the mortgagee, immediately after the adjudication, and was in possession when an execution in favor of a creditor of his own was levied on the property. The purchaser having paid but part of the price due, the plaintiff in the first execution sued out a second *fi. fa.* for the balance, which was also levied on the property. *Held,* that the adjudication, of itself, transferred to the purchaser all the rights of the ·party in whose hands the property was seized, (C. P. 690;) that the sale was complete, and that the purchaser became thereby the owner, though indebted to the plaintiff in execution for the price, (C. C. 2586;) that the debt due by the mortgagor must be considered as satisfied by the first sale; and that the proceeds of a crop gathered on the plantation, after the seizure at the suit of the creditor of the purchaser, must be applied, *pro tanto,* to the satisfaction of his execution. C. P. 722. C. C. 457.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*L. Peirce,* for the plaintiffs. The question in this case is, whether the execution of the Union Bank, of March, 1841, is to be considered as still pending against the Commagères, and the plantation as in the possession of the coroner under that writ, when the Bank of Orleans issued its writ in 1843. Now the former writ had been executed and returned. Hodge had become the purchaser; had complied with the terms of the sale by pay-

ing to the Union Bank all the instalments then due ; had taken possession and retained it ; cultivated the estate, put more slaves on it, and gathered two crops by the consent and permission of the Union Bank. If there are subsequent instalments due, another *fi. fa.* should have been issued by the Union Bank against him ; but if none were due, a subsequent creditor may surely seize the crops, and obtain a preference over the Union Bank, which had issued no new writ. The plantation could not be sold without paying, or assuming the balance due to the bank ; but unless it exercised its rights by seizure, the crops are surely liable to Hodge's other creditors, who are not to have their hands tied while the debtor is receiving ten thousand dollars a year, and to remain without the capacity of realizing their debt from his revenues. Code of Pract. art. 272. Civil Code, art. 2586. *Rodriguez* v. *DuBertrand*, 1 Rob. 535. *Black* v. *Catlett*, Ib. 540. *Gallier* v. *Garcia*, 2 Rob. 319.

*Denis*, for the appellant, cited Civil Code, arts. 456, 457, 3278, 3367. Code Nap. art. 2133. Code of Practice, art. 401. 19 Duranton, Nos. 254, 260.

SIMON, J. The facts of this case are these. It appears, that on the 15th of March, 1841, the Union Bank of Louisiana, by virtue of a judgment obtained against Michel Commagère and others, condemning the latter to pay to the said bank the sum of $31,027, with ten per cent interest per annum from the 1st of April, 1837, until paid, and ordering certain property mortgaged to said bank to be seized and sold in satisfaction of said judgment, caused an execution to be issued, directed to the coroner of the parish of Jefferson, whereupon said coroner proceeded to levy said writ upon the property mortgaged, consisting of a plantation, with the buildings and improvements thereon erected, and forty slaves attached thereto, horses, mules, &c. It appears also by the return of the coroner, that the property seized, was duly advertised for sale, when, on the 5th of May, 1841, it was adjudicated in a lump to Andrew Hodge, jr., for the price of *seventy thousand dollars*, payable in cash. The return further states, that the purchaser did not comply with the conditions of the sale, although duly notified.

The testimony shows, that Louis Commagère had moved from the plantation previous to the sale, and that M. Commagère took charge of it for Hodge, who afterwards employed Saul as overseer. Hodge sent down to the place two of his house servants

and five other hands. The property was assessed in the name of Andrew Hodge, jr., who has been in possession, appearing as owner, since the sale of the coroner, and who paid taxes to the sheriff. Hodge has made two crops on the place since the adjudication, which were sent to New Orleans by order of his brother. The first was a very small one, not sufficient to cover the expenses; but the second produced about ten thousand dollars. Thomas Saul always acted as Hodge's overseer, and has continued in possession. His salary was $1200 a year, as agreed on between him and Andrew Hodge, who also hired nine negroes from him to work in the field.

It further appears by the testimony of Wm. L. Hodge, who acted as his brother's agent, that a certain amount was paid by the latter on the execution; he does not recollect what amount, but knows it has been paid. The amount paid to the Union Bank was for instalments due, and was so paid on Hodge's own account. The witness states, that he does not know that his brother made any transaction with the Union Bank for the balance of the purchase money on the plantation; but there are now two instalments due amounting to about $9000, with interest, and if they are paid, Hodge will be entitled to a credit on the balance due, so far as the bank is concerned.

The parties have not thought it proper or necessary to take the testimony of the cashier of the Union Bank, whose evidence might have been obtained and produced, to establish the real state of the transactions or dealings between the bank and Andrew Hodge, jr. since the adjudication; but we find on the back of the second execution issued by the Union Bank against Commagère, and which has been the principal cause of this controversy, the following statement, to wit; "Credit this writ for amount received on account of the bond, *eight thousand seven hundred and sixty-five dollars*, and for interest on said bond received, *fourteen thousand one hundred and fifty-two dollars and forty-six cents*, by which the amount due on the bond is reduced to $22,260, with interest at the rate of ten per cent from the 1st of April, 1842." No credit was endorsed on the first execution, which was for the whole amount of the debt; so that the whole amount paid since the adjudication on the principal and interest,

of the mortgage debt of Commagère, appears to be a sum of $22,917 46 ; which, from the testimony of Wm. L. Hodge, was probably paid by Andrew Hodge, jr., in consequence of the adjudication. That such payments were made, appears clearly by the foregoing endorsement. Their aggregate amount makes a part of the price of adjudication, and we are induced to believe that they must be the result of arrangements made between the bank and the purchaser, subsequent to the sale. But as no evidence has been adduced to show what they were, we must take the credit as we find it, as being, under the testimony of Wm. L. Hodge, for payments made by the purchaser on his own account.

The record further shows, that a writ of *fi. fa.* having been put in the hands of the sheriff of the parish of Jefferson, on the 28th of October, 1843, issued in the case of the Bank of Orleans against Andrew Hodge, jr., to satisfy a judgment rendered for a very large amount against the latter, the same was levied on the property purchased of the Union Bank by Hodge, on the 4th November, 1843, and notice of the seizure was served on said day upon the defendant, with a list and description of the property seized. The sheriff states, that he proceeded to the plantation, and found there Thomas Saul, acting as overseer of the defendant. There was no seizure at that time from any other court ; and he left Saul in possession of the place. Saul began to cut cane the same day at five o'clock in the evening, having been appointed by the sheriff as guardian of the property while under seizure.

On the 13th of November, 1843, another execution was issued at the suit of the Union Bank against Commagère, for the sum of $31,027, with ten per cent interest from the 1st of April, 1837, subject to the credits thereon endorsed, which was put in the hands of the coroner of the parish of Jefferson, on the 15th of said month. The coroner went on the place on the 17th, found that sixty hogheads of sugar had been already made, and left a guardian on the premises to mark the hogsheads as they were filled up. He found Saul in possession of it, who told him he was acting for the sheriff of the parish of Jefferson. Saul also said, that the sheriff was in possession of the plantation for the right of Andrew Hodge, jr., and for the crop. The witness states

further, that the sixty hogsheads were already made- and gone; that he had received a note from Mr. Denis, requiring him to act without delay; and that he did not know that the sheriff had already taken possession of the place, having been informed of it by the sheriff of the parish.

The testimony of the sheriff, who, on the 23d November, had notified Thomas Saul, the guardian appointed by him by a notice in writing, not to deliver up to the coroner the administration and keeping of the property seized or the crop, further states, that he sold ninety hogsheads of sugar on the 5th of December, at $4\frac{3}{4}$ cents per pound; that this sugar was made since the deponent's possession; and that sixty hogsheads were made before the seizure by the Union Bank.

With this evidence before him, the judge, *a quo,* conceiving that the Union Bank had no right to issue a second execution against Commagère, and *to seize the property with which,* by these proceedings, Hodge had been invested, overruled the opposition made by the said bank to the sheriff's paying the proceeds of the sale of the sugar to the plaintiffs; and from this judgment, the Union Bank, after an unsuccessful attempt to obtain a new trial, has appealed.

We concur with the parish judge in the conclusion which he has adopted. The evidence establishes, that the property on which the appellees' execution was levied, had been adjudicated to Andrew Hodge, jr., on the 5th of May, 1841, for the sum of $7000 cash, which, if paid to the amount due, was to be received by the Union Bank in satisfaction of the execution issued at their suit against Commagère. *Such adjudication,* under art. 690 *of* of the Code of Practice, *thus made, had, of itself alone, the effect of transferring to the purchaser all the rights and claims* which the party in whose hands the property was seized, might have had to the thing adjudged; and, under art. 2586 of the Civil Code, *is the completion of the sale; and the purchaser becomes the owner* of the thing adjudicated. Here, Andrew Hodge put himself in possession of the property purchased, immediately after the adjudication; had the property assessed in his name; and has paid the taxes thereon ever since. The writ was returned by the coroner, who, it is true, stated in his return that the purchaser had

not complied with the conditions of the sale; but it appears that no other proceeding was had; and that, although the coroner might have exposed to sale anew the property seized, and have adjudged it to another person, as he was authorized to do by art. 689 of the Code of Practice, (*Stoute* v. *Voorhies et al.*, 4 La. 392,) the property was delivered to the purchaser, who, by the effect of the adjudication, and although indebted to the bank in the amount of the purchase, became vested with the rights of ownership formerly belonging to the defendants in the execution. Thus the sale was complete; and if Andrew Hodge, jr., had paid the price and complied with the conditions of the adjudication, it is clear, that all the rights of the Union Bank against the property would have also passed to him.

But the return shows, that the conditions of the sale were not complied with; and it is urged, that there is no sale, and that the Union Bank had a right to disregard the adjudication, and to issue another execution to finish the proceedings begun under the first, thereby considering said first execution as still pending against the Commagères. Again, the first writ was returned, and the purchaser put in possession; but the evidence shows also, that payments were made subsequently by Hodge to the bank *on his own account;* and if we take the endorsement made on the second writ as correct, it appears, that the payments made amount to a large portion of the price of the adjudication. In what manner and under what circumstances the payments were made, the record does not inform us; and so far as the evidence goes, we must believe, that the money was received by the bank from Hodge, in consequence of the adjudication, and of his having been put in possession of the property as owner. The Union Bank undoubtedly knew that he was cultivating the estate, and that he had gathered the crops raised on the plantation. This they permitted him to do for more than two years after the return of the writ; and every thing shows, not only that the Commagères had been divested of their rights of ownership to the property seized, by the adjudication to Hodge, but that the latter having become the owner of the property, was considered so by the Union Bank, who received his money and dealt with him accordingly. It seems to us that, under such circumstances, and

particularly as no steps are shown to have ever been taken by the appellants or any other person, to set aside the adjudication, and bring the property back under the ownership of the Commagères, their former debtors, the debt of the latter, by the effect of the said adjudication, must be considered as being satisfied by the proceeds of the sale of Hodge, and that the bank must now look to Hodge for the payment of the purchase money, and act against him by suit, execution, or otherwise, under their vendor's mortgage and privilege. The property may yet remain mortgaged to secure the stock sold with the plantation; but it is clear, that the appellants have no further claim to set up against the Commagères, by virtue of the mortgage given for the stock loan under which the property was seized and sold, and adjudicated by the sheriff to Andrew Hodge.

Under this view of the case, we conclude, that the second execution of the Union Bank against Commagères was improperly issued; that the rights set up by the bank to the proceeds of the sale of the sugar, *by virtue of their mortgage, as against the Commagères*, cannot be sustained; and that, therefore, the proceeds in controversy ought to go to the satisfaction, *pro tanto*, of the debt due by Hodge to the appellees under the execution by virtue of which the plantation and slaves by which said sugar was produced, were seized and taken possession of by the sheriff. This will be in conformity with art. 722 of the Code of Practice; and with art. 457 of the Civil Code, which says, that "*the fruits of an immoveable, gathered or produced since it was under seizure, are considered as making a part thereof, and enure to the benefit of the person making the seizure.*" Here, the appellants made the seizure; and they acquired the privilege allowed to them by law, for, with regard to the fruits produced by property under seizure, *jus civile vigilantibus scriptum est.*

<div align="right">

*Judgment affirmed.*