McCall vs. Irion et als.

## No. 10,469.

## MRS. WIDOW OLIVIA McCALL VS. A. B. IRION ET ALS.

## W. H. CHAFFE ET AL., WARRANTORS.

1. A party suing in virtue of her right as simple heir, for property that has descended to her as an inheritance, occupies the *exact* attitude before the court as would the ancestor himself, as plaintiff.

2. An *unrecorded* deed transfers property to a purchaser just as effectually as a recorded deed, as against all the world, *except* creditors of the vendor, and *bona fide* purchasers from him, without notice.

3. The return of a sheriff executing a writ of *fieri facias* forms an essential and integral part of the record in the sale proceedings, and under ordinary circumstances, is admissible in evidence, *as such*, when the remainder has been offered by an adverse party.

4. Once admitted in evidence in a purely petitory action, such return is not to be viewed in the light of an *attack* upon a judicial title, but as an ingredient of it.

5. At a judicial sale, the adjudication is the completion of the title, the purchaser becomes the owner of the article adjudged, and, from that time, the contract is subjected to the rules governing the ordinary contract of sale.

6. Before the sheriff is authorized to expose to sale anew the thing sold, and adjudge the property to another, a demand must be made upon the purchaser to comply with the terms of the adjudication and pay the purchase price, and the purchaser must be shown to have *refused* compliance therewith.

7. In questions appertaining to the title to real property, the sheriff's deed furnishes *proof* of the adjudication, and its recitals control those of his return.

8. Under the law a purchaser is not entitled to possession of a sheriff's deed to immovable property, it must be delivered to the clerk issuing the execution.

9. Neither the judicial, *nor extra* judicial declarations, of a purchaser at a public sale, can be admitted in evidence on the trial of a petitory action for the purpose of impeaching a judicial title.

APPEAL from the Twelfth District Court for the Parish of Avoyelles. *Coco*, J.

*Cullom & Cappel*, for Plaintiff and Appellant.

*Irion & Larfargue* for Defendants and Appellees :

Where defendants are sued for a tract of land as trespassers, and they exhibit a judgment regularly obtained, an execution issued thereon, and a sheriff's deed to their vendors followed by more than ten years uninterrupted possession as owners, the plea of prescription will be sustained, and their title cannot be assailed by the former owner or his heirs. 2 R. 466; 3 Ann. 8.

Where defendants show a divestiture of plaintiff's title by a judgment regularly obtained, an execution issued thereon, and a sheriff's deed to purchasers, plaintiff cannot offer evidence to show nullity of either judgment, execution or deed without alleging the cause of nullity in her petition. 2 Ann. 509 ; 6 Ann. 688 ; 24 Ann. 445 ; 29 Ann. 698.

Where the plaintiff fails to allege any nullity in the judicial proceedings under which defendants acquired title to property, those proceedings must be considered valid in all respects by the court, and defendants will be protected and quieted in their title.

McCall vs. Irion et als.

After a sheriff's sale, if the defendant in execution joins with another in renting the property from purchaser, and cultivates the same as lessee, he ratifies the sale and his heir cannot be heard to deny that such a sale was made.

*Bona fide* purchasers who have advanced their money on the faith of a judgment, execution and sheriff's deed, and who have possessed peaceably for many years, will not be turned out of possession for mere informalities at the instance of one who shows no injury and exhibits no equity.   8 Ann. 503.

---

*Henry C. Miller*, for Estate of T. D. Miller, Defendant and Appellee :

The defendant whose property has been seized and sold under judgment and execution, and possession delivered to the purchaser, cannot bring the ordinary petitory action for the property, the same as if no adjudication had taken place, but he must bring the direct action to annul the adjudication and sheriff's deed, and the defects in the judicial proceedings must be set forth in the petition to set aside and annul the judicial title under which the purchaser holds the property.  Code of Practice, Articles 690, 695;  6 Rob. 102; 2 Ann. 509; 6 Ann. 688; 24 Ann. 445; 29 Ann. 698.

The sheriff's return on an execution should recite his own action, to that extent is evidence, and no further.  But the law recognizing any adjustment of the price of adjudication effected between the seizing creditor and the adjudicatees, without the concurrence or even knowledge of the sheriff, his return containing the statement that an adjudication was not complied with, goes beyond his knowledge and the limits assigned by law for the return and in respect to that statement, the return is not evidence.  Code of Practice, Article 702; 3 Ann. 584; 6 Ann. 481; Gwynne on Sheriff, 476; 2 Rob. 319; 23 Ann. 458.

When the adjucatees with the full consent of the seizing creditor, is put or goes into and ever after the adjudication, remains in possession of the property adjudicated, the necessary conclusion is that the adjustment of the price of adjudication was entirely understood and arranged between the seizing creditor and the adjudicatees.  8 Rob. 450; 2 Rob. 319.

On any issue of the completion of an adjudication sought to be raised by an heir of the execution debtor to disturb and open undisturbed possession of twenty-five years, of the adjudicatees under the adjudication and sheriff's deed, the acts and conduct of the seizing creditor, his attorney and of the adjudicatees all denoting plainly that the adjudication was complied with, to the satisfaction of all concerned, carry persuasive force.

It is the adjudication which fixes the condition of the purchaser at the sheriff's sale, and no subsequent irregularity or statement in the sheriff's return can affect the rights of the purchaser.  C. P. Articles 690, 691; Civil Code, Article 2620; 3 N. S. 494; 6 Rob. 100, 108; 10 Rob. 30; 11 Ann. 545.

The sheriff's deed is the highest evidence of the completion of the adjudication, and controls the sheriff's return in case of variance.  The effect of the sheriff's deed, as an instrument of evidence, is not at all affected by the fact it was not recorded, nor is registry of any consequence in an issue not with subsequent purchasers or mortgages, but with the judgment debtor who seeks to question the title of the adjudicatees at the sheriff's sale.  Code of Practice, Articles 694, 695 ; 34 Ann. 423, and authorities there cited.

When the purchasers at sheriff's sale have been in possession for years under the adjudication, and the sheriff's deed to them has been duly executed, and is found in the clerk's office to which it was manifestly transmitted by the sheriff to be recorded as the law directs, in a suit brought by the heir of the judgment debtor against defendants, holding under that adjudication, the fact that the deed was not delivered by the sheriff to the adjudicatees will not affect their title, but it suffices that the defendant, holding under the adjudication and sheriff's deed, produce the deed to repel the attack of the heir of the judgment debtor.  Code of Practice, Articles 690, 691, 692, 693. 694, 695. 697, 698; Succes-

sion of Goodrich, 6 Rob. 110; Wright vs. Higgenbotham, 10 Rob. 32; 1 H. D. 640, No. 2; Davis vs. Wilcoxen, 5 Ann. 583; Gusman vs. The Sheriff et als., 27 Ann. 280.

The possession of ten years as owner under judgment execution and sheriff's deed supports the prescription of ten years. Civil Code, Articles 3478, 3479, 3483, 3484, 3485, 3486, 3493, 3494; Code of Practice, Articles 690, 695, 698; 2 Rob. 468; 3 Ann. 8; 13 Ann. 198.

The opinion of the court was delivered by

WATKINS, J.  This case was before us at Opelousas in July, 1888. *Vide* 40th Annual at page 690 *et sequentes*. Therein a full and explicit statement of the pleadings was given and it need not be repeated here. It will suffice, for all present purposes, to restate a few leading facts as pertinent to a trial on the merits.

This is a petitory action in the ordinary form, in which Mrs. McCall, as plaintiff, sets up a title in herself, to an undivided one-half interest in the Reverly or *Sans Souci* plantation, in the Parish of Avoyelles, by inheritance, she claiming as the only sister, and sole heir-at-law of John G. Wilson, deceased, who acquired same by purchase of Sarah Ogden, wife of *James* A. Kinhead—the other undivided one-half belonging to Euphrosine Ogden, wife of M. P. Vernon—the entire tract containing about 1900 acres.

The defendant, Miller, claims ownership of one-half of the Wilson one-half interest—*i. e.* in one-fourth of the whole—by purchase from the Chaffes, whom he calls as his warrantors; and they claim under an execution sale against Mrs. Elizabeth McMath, in foreclosure of a conventional mortgage executed by her; she having acquired title under execution sale in satisfaction of a judgment in a suit entitled George R. King, executor, vs. J. G. Wilson, for $18,600, same being the balance due by the defendant on execution, on the original purchase price of the property in question.

The defendant, Irion, claims ownership of the other one-half of the Wilson one-half interest, by purchase from Henry M. Payne, whom he calls in warranty; and Payne claims to have derived title thereto from the succession of Walter A. Kinhead, by appropriate judicial proceedings had in his *mortuaria*.

The main question for determination then, is the validity and sufficiency of the sheriff's deed of sale to the property in dispute, bearing date January 5th, 1867, and under which defendants claim ownership and possession.

The substance of plaintiff's averments is that her deceased brother, John G. Wilson, was the owner of said property until the date of his death, February 14th, 1879; that he had never been divested of his

ownership by any legal process or conventional transfer; that on or about the 5th day of January, 1867, Elizabeth McMath and Walter A. Kinhead, during his absence from the parish, took possession thereof; and having no right or title to said property, they could convey none to the defendants' authors, and, *therefore*, they are in possession without any legal right, and are possessors in bad faith, and liable for rents and profits.

Defendants and warrantors make, substantially, the same answers; and their exceptions are outlined in our former opinion. When the cause went down to the court below, their answers were elaborated, their defences enlarged, their exceptions referred to the merits and, on the trial, there was a judgment in favor of the defendants, rejecting plaintiff's demands as in case of non-suit, and, therefrom, she has appealed.

I.

(*a.*) The following appear to be the *conceded* facts, viz.:

That John G. Wilson was the brother of the plaintiff, and she is his sole legal heir.

That Wilson purchased the undivided one-half of the *Sans Souci* plantation, in 1857, from Sarah Ogden, wife of James A. Kinhead, on terms of credit; and, of the purchase price of $60,000, there remained due in 1860, $18,000, secured by mortgage.

That Sarah Ogden died in 1858, leaving a will in which her husband was instituted universal legatee, and George R. King was appointed executor. That, subsequently, James A. Kinhead died, leaving a will, in which he made a special bequest of $10,000 in favor of his brother, Walter; one of $10,000 in favor of his sister, Mrs. Elizabeth McMath; and one of $5,000 in favor of his brother, Thomas. That George R. King was qualified and confirmed executor, and the respective wills of Sarah Ogden and James A. Kinhead were duly probated and admitted to record. That, in 1860, King, executor, proceeded *via executiva* to foreclose Sarah Ogden's vendor's mortgage against the land in Wilson's possession. That no further proceedings were taken thereunder until 1866, when the executory proceedings were converted into proceedings *via ordinaria*, and, upon the defendant's confession of date October 6th, a final judgment was rendered and signed on the twelfth, recognizing and making executory said mortgage, as securing said debt for the residue of the purchase of said land. That under said definitive judgment an execution was issued, the mortgaged property seized, advertised and sent to sale, on the 5th of January, 1867, and the sheriff adjudicated same, in indivision, to Walter A. Kinhead and Mrs. Elizabeth McMath,

as the purchasers thereof, at the stated price of $4,500. That upon the same day and date, the sheriff prepared an act of sale in due form of law, in strict conformity with said adjudication, signed the same in the presence of two subscribing witnesses, affixed and cancelled the necessary amount of internal revenue stamps that were required at that time, and delivered same into the custody and possession of the clerk of court, as required by law. That said deed was never registered in the book of conveyances until after the institution of this suit, though the adjudicatees entered into possession of the property immediately after the sale, and they and their vendees have continued to possess the same ever since. That John G. Wilson remained in the vicinity for a short time after the sale, though, apparently, *exercising* no rights of ownership over the property, which was, in the month following, leased to one Lovejoy, and then went to New Orleans, where he remained until his death in 1879. That, although the judgment of King, executor, against Wilson was not credited with the proceeds of sale, or any other sum, it has been satisfied in no other way than as indicated by the said proceedings and sale. That, during his lifetime, Wilson never asserted, judicially or otherwise, any claim or pretension of ownership to this property. That all the judicial proceedings and notarial conveyances, through which the successors in title of Walter A. Kinhead and Elizabeth Mc-Math claim the property, are regular in form, and sufficient in terms to convey the property; and same are duly recorded.

(*b*.) The following appear to be the *disputed* facts, viz.:

That Walter A. Kinhead and Elizabeth McMath never possessed as *owners;* the averment of plaintiff's petition being that they took arbitrary and unauthorized possession without the color of legal right, and are, therefore, *mere naked trespassers.* That said Kinhead and McMath never paid any part of the sum of $4,500 stated in the sheriff's deed as the purchase price. That John G. Wilson never recognized or ratified said sale or adjudication, either expressly or by way of implication. That the successors of said Kinhead and McMath in title, were in legal bad faith, also, and all were bound for the payment and restitution of revenues.

(*c*.) This *resumé* of conceded and disputed facts narrows the controversy to one principal issue, and points to the sheriff's sale of January 5th, 1867, as the pivot on which our decision must turn; for one of two propositions is true: 1st, That the sheriff's sale was a valid one, and conferred title on the adjudicatees; 2d, that the sheriff's deed was a title translative of property, and a foundation of defendants and warrantors' claim of ownership by prescription, otherwise defendants title must be rejected, and that of plaintiff recognized.

## II.

The first question to which we will devote our attention is the validity *rel non* of the sheriff's sale, and his adjudication of Wilson's property to Walter A. Kinhead and Elizabeth McMath, of date January 5th, 1867.

(*a.*) It is apparent, and should be at once observed that Mrs. McCall, suing in virtue of her right as sole heir-at-law of John G. Wilson, for property that has descended to her as an inheritance, occupies the *exact* attitude before the court, in respect to the sheriff's sale, as Wilson would himself occupy as plaintiff. An heir can have no higher right than his ancestor in title.

"The heirs of a deceased person are seized of his succession at the very *instant* of his death, and the right of possession that the deceased had, continues in them, with all of its defects and advantages; the change in the proprietor producing no change in the nature of his possession." Heirs of Castle vs. Floyd, 38 Ann. 583.

From this *theorem* comes the proposition that there was no necessity for the *registry* of the sheriff's deed of sale to A. Kinhead and McMath, in order to affect the heir of John G. Wilson, the seized debtor, with notice; for it has been decided "that an unrecorded deed transfers the property to the purchaser just as effectually as a recorded deed, as against all the world, *except* creditors of the vendor, and *bona fide* purchasers from him without notice." Logan vs. Hebert, 30 Ann. 732; White vs. Sheriff, 32 Ann. 130.

(*b.*) As preliminary to the discussion of the validity of the *deed* of the sheriff, comes the question of the admissibility in evidence of the *return* of the sheriff, which appears to have been endorsed by that officer on the *returned* writ of *fieri facias* in the clerk's office, a few days subsequently to the date of sale and deed.

The counsel of the warrantors and defendants offered and caused to be filed in evidence, the judgment, execution and sheriff's deed of sale, *unaccompanied* by said official return; and when the latter was offered by plaintiff's counsel in rebuttal, the former counsel objected to *so much* of the return as recites that "the purchasers failed to comply with the conditions of the sale," on the grounds: 1st, That this statement constitutes no part of a return, and refers to a matter of which a return is no evidence; 2d, that a return is incompetent to contradict a sheriffs' deed, which cites compliance with the conditions of sale; 3d, that in a purely petitory action, such evidence is incompetent to contradict a sheriff's deed, upon which defendants' case depends; 4th, that inasmuch as plaintiff's petition does not assail the sheriff's deed as incomplete or illegal, the proof is inadmissible under the pleadings.

These objections were sustained, and to the judge's ruling, plaintiff's counsel reserved a bill.

The one drawn in question is a judicial title, and the whole of the judicial proceedings which culminated in the sale, including the petition, citation, judgment, execution notice to appoint appraisers, advertisement, appraisement and sheriff's deed, are in evidence. This return forms an essential and integral part of the *record*, and, under ordinary circumstances, is admissible in evidence, *as such*, when the remainder has been already offered and filed in evidence. We do not think this case presents an exception to this rule. While it is, also, true that, in a purely petitory action a trial of titles should be had, upon the *face* of those presented, and as a general rule their validity cannot be assailed or attacked collaterally; yet in this case defendants' counsel offered and introduced in evidence, as collateral and corroborative circumstances, proofs of Wilson's voluntary abandonment of the property, and silence as a claimant of it, through a long series of years; his alleged declaration that he no longer owned the property; his recognition of the ownership of A. Kinhead and McMath ; proof of the fact that said purchasers were beneficiaries of Sarah Ogden and James A. Kinhead, and as such, entitled to the proceeds of sale, to whom, as legatees of the latter, same were destined primarily; the subsequent acts and conduct of King, executor, as the agent, attorney and affiant of Walter A. Kinhead in certain judicial proceedings looking to the collection of rent from Lovejoy as tenant under him, of the property in dispute; and we do not see how we could in a spirit of fairness and perfect justice to the plaintiff, preclude similar proof in rebuttal by her. We think it a better rule, in doubtful cases, to admit evidence than to reject it.

Especially is this true when the trial occurs before a judge. The objection urged, seems rather to go to the effect than to the admissibility of the evidence. Under all the circumstances we deem it best to give it consideration. But in admitting this return *as* evidence, we do not wish to be understood as holding that it is to be viewed in the light of an *attack* upon a judicial title, but merely as an *ingredient* of it, for certainly the doctrine upon which the judge *a quo* rested his decision, is too well founded to admit of question. 2 Ann. 509; 6 Ann. 688; 8 Ann. 503; 23 Ann. 175; 24 Ann. 224, 445; 29 Ann. 698.

But the effect of this return is to show, as a circumstance, the imperfection or incompleteness of the title in itself,—it being a part of the judicial proceedings through which it emanated. Its *value* we will next consider.

(*c.*) The law imposes upon a sheriff the duty of passing " an act to

the purchaser of the property within *three* days after the adjudication."
C. P. 691.

It declares that " the *adjudication*    *    *    *    *has of itself alone,*
the effect of transferring to the purchaser all the rights and claims
which the party in whose hands it was 'seized might have had to the
thing adjudged." C. P. 690.

The act of sale "*must* make mention," among other things, " of the
manner in which the purchaser has paid the price," as well as " of the
price and conditions on which (the property) has been adjudged." C.
P. 693.

It shall conclude by selling and transferring to the purchaser all the
right which the former owner had to the thing sold. C. P. 694.

"This act of sale adds nothing to the force and effect of the adjudica-
tion, but it is only intended to afford the *proof* of it." C. P. 695.

" The sheriff shall, within *ten* days at farthest from the adjudication,
deliver or direct to the clerk of court which issued the writ of *fieri
facias* the original of the act of sale which he has passed to the pur-
chaser for the object sold to him," &c. C. P. 647.

" The sheriff    *    *    shall deliver or direct to the clerk of the
court the original of the writ on which he shall endorse *a return* signed
by himself, of the manner in which he has executed it," and within
*seventy* days after its issuance. C. P. 700.

" In his return the sheriff shall specify the object seized and sold, and
shall declare whether the sale was made for ready money, or on credit,
who was the purchaser, at what price, and on what conditions." C. P.
703.

From these consecutive provisions of the Code of Practice, which are
directory in their character, it appears that, while it is expected that
the recitals of the act of sale and the return of the sheriff will be con-
sistent, the latter do not *control* the former, for the plain reason that the
supposition is that the *return* will follow the *act of sale* in terms, as it
*must* in *date,* therefore, the deed must control the return. As a matter
of fact the deed of sale was executed by the sheriff on the 5th of Janu-
ary, 1867, and his return was not filed in the clerk's office until the 25th
of that month. The averment of plaintiff's petition—and it is in keep-
ing with other evidence on the subject—is, that the purchasers took
possession of the property on the 5th of January, 1867, and, therefore,
*twenty days prior to the filing of the return.* If the recitals of the return
to which the purchasers were not parties, or privies, are held to control
the recitals of the deed of sale, we would have the anomalous condition
of affairs presented, of a party holding, as owner, immovable property,

under a judicial title, perfect in form, reciting full compliance with all the terms and conditions of an advertised sale, *unceremoniously turned out by the sheriff's own fiat, and of his own free will.*

Surely this is not the law!

But we are not left in doubt on this subject, for the terms of the Civil Code in treating " of sales by auction," are, that " the *adjudication is the completion of the sale;* the purchaser becomes the *owner* of the article adjudged, and the contract is, from that time, subjected to the *same rules which govern the ordinary contract of sale*." R. C. C. 2608.

This article, and the corresponding article of the Code of Practice, have been the subjects of frequent judicial discussion, and quite a contrariety of opinion has been expressed as to the *particular time* at which a judicial, indefeasible title passes to a purchaser; and plaintiff's counsel cites the abjected expression in the return, as proof of the non-payment of the price, and of the *incompleteness* of the adjudication, under C. P. 689.

But this argument was met and answered in Commissioners of the Bank of Orleans vs. Hodge, 8 Rob. 450, in unmistakable terms of which the following are pertinent:'

"The evidence establishes, that the property on which the appellees' execution was levied, had been adjudicated to Andrew Hodge, Jr.      *      *      for the sum of $7000 cash, which, if paid to the amount due, was to be received by the Union Bank in satisfaction of the execution issued at their suit against Commagère.

" *Such adjudication,* under article 690 of the Code of Practice, *thus made has of itself alone, the effect of transferring to the purchaser all the rights and claims* which the party in whose hands the property was seized, might have had to the thing adjudged; and, under Art. 2586 of the Civil Code,—(2608 of Revised Code)—*is the completion of the sale; and the purchaser becomes the owner* of the thing adjudicated. Here, Andrew Hodge put himself in possession of the property purchased, immediately after the adjudication; had the property assessed in his name; and has paid the taxes thereon ever since. The writ was returned by the coroner, who, it is true, stated in his return that the purchaser had not complied with the conditions of the sale; but it appears that no other proceeding was had; and that, although the coroner might have exposed to sale anew the property seized, and have adjudged it to another person, as he was authorized to do by Art. 689 of the Code of Practice,      *      *      the property was delivered to the purchaser, who, by the effect of the adjudication, and although indebted to the bank in the amount of the purchase, became vested with the rights of

ownership formerly belonging to the defendants in the execution. Thus the sale was complete."

It would be difficult to find a case more completely like the one at bar, than this.

It is true that Article 689 of the Code of Practice declares that "if the person to whom the property has been adjudged, shall *refuse* to pay to the sheriff the price of the adjudication    *    *    the sheriff shall expose to sale anew the thing sold, and adjudge it to another;" and *it* has been held to render the adjudication incomplete.

In Washburn vs. Green, 13 Ann. 332, this article was construed with R. C. C. 2608 (2586), thus:

" The purchaser at a judicial sale acquires such a vested right to the property by the adjudication, that it cannot be divested and taken from him, unless he *refuses* to comply with the terms of sale. It is in his power, by a compliance with the terms of sale, to become the owner by indefeasable title. It cannot be taken from him. In this sense, the adjudication is the completion of the sale."

There are many decisions to this effect: 14 La. 588; 5 La. 472; 15 La. 398; 2 Ann. 361; 14 Ann. 449. But from a careful perusal of them all, the underlying principle will be found to be, that the purchaser must be first called upon to comply with the terms of the sale and pay the price, and must be shown to have *refused* so to do. In such case, his refusal, or declination, is treated as a mere *passive* violation of a contract, the enforcement of which must be preceded by a default, as a condition precedent.

Upon a consideration of the authorities, our predecessors said, in Doll vs. Kathman, 23 Ann. 486:

" The defendant, it is charged, has never paid any part of the price of the property, and it is not shown that he has. It is argued on the part of the plaintiffs, that never having paid for the property, he is not the owner of it. It is not shown, however, that the heirs, or any person authorized, have ever made any demand of payment, or that defendant has been put in detault, a condition precedent to the right of the plaintiff to recover." The court then cited Washburn vs. Green, *supra*, as consistent with that theory.

But the question of the purchaser's compliance is not one *en pais*. The sheriff promptly executed an act of sale, in precise conformity with the adjudication. This act affords *proof* of the adjudication, and it recites the payment of its price. This act must prevail against the return.

In Carroll vs. Schun, 34 Ann. 423, we had under consideration, and passed upon the comparative weight and value of recitals contained in

McCall vs. Irion et als.

a sheriff's deed and return, and held that those of the deed controlled the destination of the title. That decision is consistent with those of our predecessors, and with the provisions of the Civil Code and Code of Practice.

Having reached the conclusion that the sheriff's deed is unaffected by the recitals in his return, we must conclude that it has no *manifest* imperfections, and conveyed the title.

### III.

Plaintiffs urge, as an objection to the completeness and sufficiency of the defendants' title, the absence of all proof of the payment of the price of sale, or of any satisfactory adjustment of the price, with King, executor, or of a delivery of the sheriff's deed to Walter A. Kinhead and Elizabeth McMath as purchasers.

They offered in evidence certain other judicial proceedings and records, for the purpose of showing certain judicial, and *extra* judicial declarations of said purchasers, antagonistic to their alleged acquisition of title. These were objected to by defendants' counsel, and their objections were sustained, but the documents were brought up with a bill of exceptions. The main objections to their being received in evidence were that they are *res inter alios acta* and impertinent to the issue.

All of these questions falling under one general head, may be treated together.

(a.) As we have already ascertained, the simple failure of the purchaser to pay the price does not have the effect of divesting his rights under the adjudication, and hence the absence of proof of the payment of the price, could have no greater effect.

(b.) Under the law the purchaser is not entitled to the possession and control of the sheriff's deed. The law says "the sheriff shall, within ten days at farthest from the adjudication, deliver to the clerk of the court * * the act of sale, etc." C. P. 697

(c.) Neither judicial, nor extra-judicial declarations made by Walter A. Kinhead, or Mrs. Elizabeth McMath, could be received, in a petitory action, for the purpose of impeaching a judicial title. It does not matter to the plaintiff, as Wilson's simple heir, that such title was not of record when she filed her suit. It has been disclosed and recorded since. Her only recourse is to a direct action.

Under the view of the case which we entertain, all of this evidence was properly rejected. On the whole we conclude that the defendants' titles are good and valid, and that they are entitled to a final judgment in their favor, and the decree appealed from should be so amended.

It is, therefore, ordered and decreed that the judgment of the court *a qua* be so amended as to decree the defendants to be the owners of the property in dispute and that they be quieted in possession, and that plaintiffs be taxed with all costs.

Mr. Justice Fenner recuses himself on the ground of relationship to Warrantor Payne, and the Chief Justice being absent at the argument on the hearing of the merits, takes no part in the opinion.