## NEDA *v.* FONTENOT et al.

A judgment creditor having a judicial mortgage upon all the immovables of an insolvent succession, may sue a third person alleged to have in his possession property belonging to the succession, to compel its delivery to the administrator. *Per Curiam:* An administrator is only bound to account for what he receives; and if he could not be compelled by the creditors to take possession of all of the assets of the succession, they would be left without a remedy.

The deliberations of creditors touching the sale of the property of an insolvent succession must, in all cases, be homologated, or the sale will be null.

Clerks of courts have no power to homologate the deliberations of creditors touching the sale of the property of insolvent successions. Const. art. 79. Stat. 29 May, 1846. The homologation is a judicial act.

Where the mortgage creditors of an insolvent succession have declared their wish to exercise the right of requiring that so much of the property should be sold for cash as may be necessary to satisfy their claims, they should not be considered, in counting the votes to as certain the wish of the majority of the creditors in number and amount, as to the terms of sale of the residue of the property.

Where an administrator, charged with the sale of the property of a succession, acts at the sale as the agent of one who purchases a large portion of the property, the sale will be null. It will make no difference that he did not act from improper motives. C. C. 19.

Under the laws in force in 1805, the appraisement in the marriage contract of a slave brought into the marriage by the wife transferred the right of property in the slave to the husband; and the only claim of the wife was for the amount of the appraisement.

APPEAL from the District Court of St. Landry, *Overton*, J. *Martin* and *Brent*, for the plaintiff. *Lewis*, *Swayze* and *Taylor*, for the appellants. The judgment of the court was pronounced by

Rost, J.   The administrator of the succession of *Garrigues Flaujac*, be-
lieving the solvency of the succession to be doubtful, caused a meeting of its
creditors to be held before a notary public, to deliberate and decide upon the
terms and conditions of the sale of the property left by the deceased.   The
proceedings were kept open eleven days by the notary, and during their con-
tinuance two of the present defendants, representing themselves to be mort-
gage creditors to the amount of about thirty thousand dollars, exercised their
legal right to require a cash sale up to the amount of those claims.   Placing
the amount of those mortgage debts out of view, a majority in number and
amount of the other creditors voted that the property be sold at a credit of one
year for all sums of one hundred dollars and under, and on three equal annual
instalments for all sums over one hundred dollars.   The proceedings before the
notary were then closed, and filed in court on the 28th of December, 1846.

On the 16th of January following, the administrator applied by petition to
the District Court for the homologation of the proceedings of the creditors, and
for a sale of all the property for cash, subject to the mortgages of the *Union Bank*
and *Citizens Bank;* and, on the same day, the following order was made there-
on by the clerk of the court:

"Let the proceedings of the meeting of creditors of the late *Garrigues
Flaujac*, deceased, be, and they are hereby homologated and confirmed, no op-
position having been filed within the time prescribed by law; and let a sale of
the property belonging to the estate of the said deceased be made by *Evariste
Débaillon*, public auctioneer in and for the parish of St. Landry, on the terms
fixed by the majority in claims of the creditors of said estate."

The record farther shows that these proceedings were followed up by a com-
mission, which the clerk issued on the 23d of the same month, to sell the whole
estate for cash, subject to the mortgages held on said property by the *Citizens
Bank* and the *Union Bank of Louisiana*.   On the 23d of February, and the two
following days, property of the succession was accordingly sold for cash, to the
amount of $43,644.   A portion of the property not having brought the amount
of the appraisement, the administrator, on the 2d of March ensuing, applied to
the court to be authorised to sell it on a credit of twelve months: the authori-
sation was granted on the same day by the clerk, and the remainder of the
property was sold in conformity therewith.

On the 16th of February, before the first sale took place, the plaintiff filed
an opposition to the sale on the terms fixed in the decree of homologation, al-
leging, among other grounds, that the clerk had no power to homologate pro-
ceedings of that description.   This opposition was served on the defendants
four days previous to the sale of the succession, which took place, as already
stated, on the 23d and the two succeeding days, and which gave rise to the in-
stitution by the plaintiff of another action to set it aside and annul it, and farther
to cause to be brought into the succession certain slaves, and also rents and
profits produced by the plantation and slaves of the deceased since his death,
alleged to have been received and expended by his widow, the defendant *Marie
Louise Fontenot.*   This suit was cumulated with the opposition, and presents,
in addition, other grounds of nullity, some of which we will notice.   The
court below, after a thorough investigation of the facts of the case, and of the
law applicable to them, gave judgment in favor of the plaintiff, and the defend-
ants appealed.

The exception filed by the defendants to the capacity of the plaintiff to main-

NEDA
v.
FONTENOT.

tain her action, so far as it has for its object to compel the defendant *Marie Louise Fontenot* to deliver to the administrator slaves alleged to belong to the succession, was properly overruled. The succession is proved to be insolvent. The plaintiff is a judgment creditor, and has a judicial mortgage upon all the immovable property of the succession; her right to prevent any portion of it from being either withheld or unlawfully sacrificed, cannot be doubted. The administrator is only bound to account for what he receives; and if he could not be compelled by the creditors to take possession of all the assets of the succession, they would, in cases like this, be left without a remedy.

We find it unnecessary to go into an examination of all the grounds of nullity taken by the plaintiff's counsel. The following are fatal to the defendants: 1st. The deliberations of creditors touching the sale of property must be homologated.   2d. The clerks of the District courts have no power to homologate them.   3d. The terms on which the property was sold, were not those which had been fixed by the creditors.

Article 1164 of the Louisiana Code expressly requires the homologation of the proceedings of the creditors in cases like the present; and we know no rule of construction upon which that article can be considered as repealed by article 1039 of the Code of Practice. Supposing the latter article to have reference to the insolvent act of 1817 and the acts amending it, those acts only dispense with homologation, when no opposition is filed within ten days, in proceedings for the appointment of syndics. It was never doubted before, that the deliberations of creditors touching the sale of property must be in all cases homologated; and the facts of this case place in the strongest light the necessity of the rule.

Article 79 of the constitution provides that the powers which the legislature is authorised to vest in the clerks of courts shall be *specified and determined.* In the act of 1846, defining the powers given to the clerks, the power to homologate the deliberations of creditors is not specified.

It was contended at bar that, where no opposition is made within ten days, the power to homologate is incidental to the delegated power of ordering the sale of the property of the succession; that in such cases it is a ministerial, not a judicial act; that the law does not require the deliberations of creditors to be placed on the docket of the court, unless opposition has been made; and that if the clerk has not the power to homologate them, no action whatever can be had upon them.

If the homologation be a ministerial act when no opposition has been filed, how does it happen that the clerk who granted it in this case fell into two capital errors ?   The two mortgage creditors were entitled to have so much of the property sold for cash as would satisfy their mortgage claims, but those claims should not otherwise have been taken into consideration in the counting the votes; without them, the majority of the creditors in number and amount had voted for a credit sale, and the clerk ordered it to be made for cash.   In relation to the claims of the *Union Bank* and *Citizens Bank*, the creditors had not the right to require a cash sale; and, if they had done so, their deliberations in that respect should have been disregarded, as being contrary to law.   The decision of those important questions, which the nature of the debts, the laws regulating the administration of property banks, and the conflict between the creditors as to the terms of sale, presented, was, in the strictest sense of the term, a judicial act, which clerks are not authorized to perform.

When the deliberations were filed in court it was the duty of the administrator to have them homologated; and it cannot be seriously urged that the court had not the power to homologate them, at any time during its session.

We have already shown that the terms of the sale were different from those fixed by the majority of the creditors; but we cannot close this part of the case without observing, that another cause of nullity has been shown. It is in evidence that the administrator, being charged with the sale of the succession property, acted at that sale as agent of *Marie Louise Fontenot*, who purchased nearly the whole of it. This was clearly illegal. It is not proved, and we have no reason to believe, that he acted thus from improper motives; but " when to prevent fraud, or from any other motives of public good, the law declares certain acts void, its provisions are not to be dispensed with on the ground that the particular act in question has been proved not to be fraudulent, or not to be contrary to the public good." Civil Code, art. 19.

We concur with the learned judge of the first instance in the view he has taken of the rights of the succession to the slave *Sophie*, and her children. The marriage contract between the deceased and his wife was executed in 1805. The slave *Sophie* was brought into the marriage by the wife, and appraised in the contract. Under the laws then in force, the appraisement transferred the right of property to the husband, and the only claim of the wife is for the amount of it. *Gordon et al.* v. *Williams et al.* 6 Mart. 659.

The claims of the succession against the defendant *Marie Louise Fontenot* for the proceeds of the fruits of the property of the succession received by her, must of course be compensated with an equal amount of her claims; and when a tableau of distribution is filed, the creditors will have the means of ascertaining whether the administrator has done his duty in this behalf.

The care taken by the judge of the court below in the preparation of the case, and his lucid and able opinion, have greatly facilitated our investigation. We are satisfied that he has done justice between the parties, and that the judgment ought to be affirmed. *Judgment affirmed.*