BREAUX, J.
Plaintiff, Hardy, is a judgment creditor of the Pecot Sugar Factory *351 Company (a company that will he referred to hereafter, for a little brevity’s sake, as the “Pecot Sugar Company”) on a judgment obtained by him against the company in the year 1894 for one sum of $2,245.93, with 8 per cent, interest, in the further sum of $400, with 5 per cent, interest, and in the further sum of $246.08, and in an additional sum of $50, with 5 per cent, interest, the date from which interest begins to run on the respective amounts, as stated in this judgment: less a credit 'of $350 paid December 12, 1896, and costs. Plaintiff’s husband died, and she, as the executrix of his last will and testament, prosecutes this suit. She claims a judicial mortgage for the amount from the 7th day of December, 1897, the date on which this judgment was inscribed in the mortgage office.
The Pecot Sugar Company owned a sugar plantation, consisting of different tracts of land, owned in common prior to the date the company was formed by members' of the Pecot family. Some of the members of the family were married, and became indebted to their respective wives for paraphernal amounts received by them. In course of time three of the wives obtained judgments for their paraphernal claims, which thereafter bore upon fractional portions of the property.
It appears that two tracts of land, owned by others than the vendors, formed part of the plantation, which in course of time became the property of the Pecot Sugar Company.
We will later again refer to these mortgage and other claims preceding in date, sold by Ermann & Cahn to the Pecot Sugar Company.
The place was sold within the year 1896 (March) in the foreclosure proceedings of Fallon v.*D. M. Pecot. This Pecot, it seems, had the property in his name at the time.
Ermann & Cahn became the owners of the place at this sale, and sold it with full warranty to the Pecot Sugar Company in the year 1896 (August), payable (as to part of the purchase price) on credit. This company remained owner until 1898. In February of that year John N. Pharr alleged that he had become the owner of the notes executed by the Pecot Sugar Company for the purchase price of the plantation sold, as before mentioned, to Pecot Sugar Company; that two of these notes had matured; and asked for an order of foreclosure of the mortgage with which the notes he held were identified. The property Was, in the foreclosure proceedings, advertised to he sold for the sum of $12,918.61 principal of the past-due notes, with interest at 8 per cent., less a credit of $2,632.31, paid on account on August 13, 1897, cash; also for 5 per cent, attorney’s fees on principal and interest of eight notes for $6,459.30 each, and costs. The sale was made on terms of credit corresponding with the amounts on each of the remaining eight notes due, respectively, on the 1st day of January thereafter to and including the 1st of January, 1906, bearing 8 per cent, per annum interest from August 1, 1896, until paid. The property in due time after this advertisement was adjudicated to and bought by John. N. Pharr for $82,000; in cash $12,918.-61, with 8 per cent, interest from August 1, 1896, loss a credit of $2,632.31 paid August 13, 1897; also 5 per cent, fee of attorney on balance due on above amount, and 5 per cent, on the other notes, including interest and principal — all corresponding with the said advertisement, which we have reproduced in full.
At the date of the sale the balance due on the notes, principal and interest, after deducting credit was..........$11,833.50
Attorney’s fee .............. 3,513.00
Advance on crop............. 3,563.53
Cost of suit................. 590.10
Total ..................$19,500.13 cash
—And on credit eight notes, each for $6,459.-30%, making total of eight notes, $51,674.44, and without taking account of interent, *353 which was settled between the parties, and therefore not allowed here. Total .said notes and cash due, $71,174.51, to be deducted from Pharr’s bid of $82,000, which, according to this statement, would leave a balance of $10,825.51. Instead of that amount there was nil left for distribution according to the sheriff’s return after the sale. The return showed: Claims ...................$82,000
Sale .....................$82,000
The cash before mentioned was not paid to the sheriff. The bidder, Capt. Pharr, retained the amount of the bid, and only paid cost of the proceeding.
Plaintiff asks that Pharr be ordered to pay over the balance of $10,825.57 (ten thousand eight hundred and twenty five 5t/100 dollars) to the sheriff. He (plaintiff) alleges that he is entitled to be paid by preference out of the said sum above referred to, realized from the sale of said property, he being, he states, a mortgage creditor next in rank to John N. Pharr, who, he avers, owes a balance on his purchase of the plantation.
In a supplemental petition plaintiff sets forth that, in addition to the amount already claimed by plaintiff as being in excess of the amount to which the defendant was entitled as credit, the item of $3,563.53, which appears on the return of the sheriff, should also be deducted as costs in advances made on the crop growing on the plantation then under seizure. The contention of plaintiff is that the advances were not made, and, if made, they were not secured by privilege on the crop; that they were made without the sanction of the court.
Plaintiff, in this supplemental petition, also challenges Pharr’s, the adjudicatee’s, right to credit of 5 per cent, attorney’s fees, on the principal and interest of the unmatured notes, and asks that the fee be reduced to 5 per cent, on the amount due at the date of the sale, to wit, on $11,833.50, being the sum of $591.66.
Plaintiff asks that Pharr, the adjudicatee, be condemned to return the sum above mentioned for attorney’s fee (the $3,563.53 before mentioned), together with the amount of $10,825.43, claimed in his original petition, or a sufficient sum thereof to satisfy petitioner’s demand as mortgagee.
There is, as urged by defendant, a difference in pleading between the original pleading, in which plaintiff prayed for a balance, without questioning the correctness of the item just mentioned, and the supplemental petition, in which these claims are attacked for illegality.
Defendant denies that the return of the sheriff on the writ of “seizure and sale” attacked by plaintiff is incorrect, and avers that the advances made by the sheriff while-the property was under seizure were necessary to preserve the crop on the property seized, and that they were a part of the cost of seizure. He further insists that he does-not owe the interest on the notes representing the price claimed by plaintiff; that when he bid on the property he was owner of all the notes, matured and unmatured, bearing upon the property; and that the $82,000 before mentioned was the full amount of his indebtedness as adjudicatee, without the interest accruing after the sale under which he became the owner.
Defendant also sets up in his defense that he is entitled to other credits than those credited in the return; that the wife of one of the former owners of the property claimed to be the owner of a fractional portion of the property seized, and that upon this claim she obtained judgment for the property; and that, in order to secure a good title, Capt. Pharr says he was forced to buy this undivided portion, for which he paid the sum of $1,675; that the wife of another was equally as successful in obtaining a judgment against the property as owner of the undivided interest of the remainder; for that he paid $1,500; that he had, in addition, to pay a mortgage on the property for $9,680, as shown by a *355 legal judgment, winch he succeeded in lifting by paying $5,000 to the mortgagee; that another mortgage was on, for which he paid the sum of $2,300; and there was still another claim, also secured hy mortgage, which he bought by paying the sum of $1,500. All these claims the adjudicatee, Pharr, asserts he paid after he had become the owner of the property, and he claims to be entitled to credit therefor.
These claims were all due prior to the sale of August, 1896, of Ermann & Cahn to Pecot Sugar Company, which contains the warranty clause. To quote upon this subject from defendant’s brief, regarding the dates of all these claims: “The incumbrances on the property that primed the claims of both Pharr and Hardy.” They — these mortgage claims and claims of asserted owner, above referred to — could not prime “Pharr and Hardy” unless they were of a date anterior to the sale just mentioned. In other parts of the brief the claim is referred to, substantially, as of a date anterior to that sale of Ermann & Cahn to the Pecot Sugar Company, and it follows that they fell within the warranty.
To extinguish these claims, amounting altogether to about $25,000, Pharr paid $8,800 in all to these different creditors and owners, and he claims that he became subrogated to these prior claims up to the amount of $8,800, the amount paid by him for their release.
It seems to be an undisputed fact that the seised debtor, the Pecot Sugar Company, had become insolvent, and was in the hands of the insolvency court, which had appointed a representative, under Rev. St. § 688, to take charge of its affairs.
Defendant Pharr’s contention, among others, is that, in view of this insolvency and consequent appointment by the court of a representative against whom the said proceedings of foreclosure were conducted, if he is compelled to turn over any amount, it should be to this representative, and not to the sheriff.
Plaintiff, Hardy, to the end of meeting the demand of Capt. Pharr (to have credited on his account the $8,800, before mentioned, as having been paid by him as before stated), invokes an estoppel, based upon the ground that Capt. Pharr, adjudicatee, was the transferee of Ermann & Cahn of the notes representing the credit price before mentioned; and that he (Pharr) is, in consequence, es-topped.
That sale of Ermann & Cahn to the Pecot Sugar Company was with full warranty, as before mentioned, against all mortgages and claims. That Capt. Pharr’s rights were not greater than those of Ermann & Cahn, his vendors.
As this estoppel plays great part in this suit, we will restate the parts having some bearing in juxtaposition.
The Pecot property became the property of Ermann & Cahn. They sold it with warranty to the Pecot Sugar Company. Capt. Pharr, as holder of notes representing credit portion of the price, foreclosed, and became owner at sheriff’s sale. The sheriff made out a “return” of all claims chargeable to this place since it was owned by the Pecot Sugar Company.
In other words, these were, prior to the sale of August, 1896, mortgages on the property, and when Ermann & Cahn sold to Pecot Sugar Company they bound themselves to protect these buyers from these claims.
Capt. Pharr became subrogated to the rights of Ermann & Cahn under this deed.
This is the second appeal.
Plaintiff, as developed in the first appeal, attempted to call Ermann & Cahn in warranty, and to make them answer in the parish of St. Mary. This court in the first decision held that plaintiff’s claim was not ex contractu between Hardy and Ermann & Cahn; that the former had no right to a call *357 in warranty, and dismissed the suit in so far as Ermann & Cahn were concerned, and remanded the cause to be tried contradictorily between Hardy and defendant Pharr.
The judge of the district court, on trial of the ease after it had been remanded, reviewed all the issues, and arrived at the conclusion that there is a balance due by the adjudieatee, Pharr, of $5,746.80, and the defendant Pharr appealed. Oapt. Pharr having died ■since the appeal was taken, his widow and heirs represent his succession. This is the second appeal.
The following shows the items as decided by the judge of the district court:
Amount in principal and interest of all notes up to date, when, sheriff sold.......$70,573 10
5 per cent, attorney’s fee on this sum...... 3,528 65
Costs of court................................. 590 15
Advances on crop............................. 1,561 30
$76,253 20
Leaving balance of........................... 5,746 80
To complete the bid of......'................. $82,000 00
And the judge a quo held that Oapt. Pharr must pay over the sum of $5,746.80, unless he has legal reason for retaining it.
Defendant, among other complaints, charges that plaintiff illegally amended his original petition regarding two items carried to defendant’s credit on the “return”; one relating to advances made by the sheriff while the plantation was under seizure, and the other relating to the fee of attorney just passed upon. It is true that plaintiff accepted the correctness of the “return” in his original petition, passed them without objection, and with some approval. He sought afterward by an amendment to rectify his position as plaintiff, and charged that these claims were illegal. As neither of these claims is allowed to plaintiff, the question loses all importance.
With reference to the representative (the commissioner or receiver) of the corporation, and his demand for recognition, and to be placed in the possession of any balance, we will state that plaintiff asks for a “sufficient amount to satisfy his demand,” to copy from his petition.
To that extent, if he (plaintiff) is entitled to any amount at all, there is no necessity of a commissioner to receive it and turn it over to him. The sheriff is equal to that arduous task, and, as he is party to the proceedings, we will not change that portion of the decree to the extent that plaintiff is concerned.
We agree with learned and able counsel for defendant that there is no warrant for a judgment ordering the defendant to place in the hands of the sheriff, or commissioner, or any other person a much larger sum to await such suits as other unnamed judicial mortgage creditors may hereafter elect to file. For that reason the right of the commissioner to any fund in this case is passed without further comment.
We will dispose of the question pressed upon our attention by plaintiff, of interest claimed by plaintiff, Hardy, as having accrued .against the buyer after the last of the sales as before mentioned, to the date that the credit portion of the purchase price became due under the terms of the sale advertised.
If a third person had bought and had assumed the credit portion' of the purchase price, he would have been bound for principal and interest of the notes in question at their maturity.
Here the buyer held a claim against the defendant in the executory proceedings.
On his becoming the debtor of the corporation, as adjudicatee, he had the right to use his claim, secured by mortgage on the property, as a set-off, or rather he had the right to present his claim as an amount for which he was entitled to credit at the day of sale. The contention raised by plaintiff for this amount was properly rejected in the district court. The creditor, under the circumstances here, cannot be made to pay interest on the amount of his indebtedness as *359 adjudieatee. ■ Moreover, the bid was $82,000, and not a larger amount. It was accepted and treated as such; that is, as a bid for $82,000 only.
Moreover, plaintiff is not interested in obtaining a correction of his return any further than needful to meet his demand.
As relates to the fee of attorney — another question before us for decision — we are not inclined, in deciding this cause, to hold that defendant has gone beyond the bounds heretofore laid down in deducting 5 per cent, for attorney’s fee, calculated on notes matured and not matured. Grunewald v. Company, 49 La. Ann. 489, 21 South. 646.
Defendant, doubtless relying upon that decision, allowed the fee. It has been paid to the attorneys in the cause. It would be a hardship, in so far as defendant is concerned, to now order a change.
The question of fee of attorney on the line mentioned should remain (as to claims of anterior date to this decision) as laid down in the cited decision. All parties are now sufficiently notified that the question of commission or fee on notes not matured may be reconsidered hereafter, and with that notice similar claims in the future will not necessarily be protected by a decision of this court. We express no opinion. We only state that it will be reconsidered when presented in a proper case arising on claims of date after the present decision.
Regarding the action and plaintiff’s right of action to assert this claim we can only say that in the Neda Case, 2 La. Ann. 784. this court said that which has bearing here:
“Plaintiff is a judgment creditor (as plaintiff here is) and has a judicial mortgage. I-Ier right to preserve any portion of it from being- either withdrawn or unlawfully sacrificed cannot be ..doubted.” (Parenthesis ours.)
Why should plaintiff here have less right?
There is-no necessity of referring to any law to sustain the following proposition: If the,debtor here, the Pecot Sugar Company, had no creditors at all, It could proceed by rule to compel the sheriff to pay the remaining balance due as per the sheriff’s return. The creditor, with claim secured by mortgage, may exercise the right which his debtor might or should have exercised in the interest of his creditor.
Defendant’s contention is that plaintiff is-without right to stand in judgment at all in loco debitoris.
Plaintiff, as a matter of justice and right, is not to be left at the mercy of his debtor;, that is, if the debtor does not choose to act, then the creditor is not to lose his claim entirely.
Defendant urges that the purchaser here, Capt. Pharr, is a third possessor, and that plaintiff, if he has a right of action (which is denied), it is the hypothecary action.
If plaintiff, as a judgment creditor, has any right at all, we think he has a right of action to have the sheriff’s return on writ of seizure and sale (on the property on which he has a general mortgage) corrected, and for a judgment decreeing the correct balance, if there be a balance.
This brings us to the question of warranty as contained in the deed of August, 1896, referred to in our statement of the-case. Warranty can be pleaded by parties- and those in privity with them, and not by third persons. This relates to the call in. warranty and the right to make the warrantor a party to the suit.
But if an alleged second mortgage creditor comes in conflict with an asserted first mortgage, although the first has not. the right to call the second in warranty, he may, in proper proceedings, recover his right if it primes the first mortgage.
We are not concerned about the call in warranty that has been decided on the appeal. Ubi supra.
We must decide between two conflicting claims when they are before us for decision.
If plaintiff has any right, it is not lost by *361 reason of the fact that he could not call Pharr in warranty.
In the cited case this court said:
“Granting that he has the legal right to exercise the right of the Sugar Company as his debt- or against its warrantor, he must be restricted to know of cases in which the contract of warranty may be enforced. In our opinion, it is not competent for the opponent to resort to the present form of proceeding in the attempted enforcement of his right against Ermann & Cahn.”
It follows in any other legal form of proceeding plaintiff may obtain any right he may have. If there is a remaining right, it cannot be destroyed by the fact that he cannot cite a vendee in warranty.
We pass to the last and the important issue involved — the right of Pharr, adjudicatee, and Hardy, mortgage creditor.
Pecot Sugar Company, it will be recalled, executed notes in favor of Ermann & Cahn, their vendors, each of which is secured by mortgage on the plantation of this sugar company, which was adjudicated in 1898, as before mentioned, and each was transferred to Pharr, adjudicatee.
These notes and the mortgage had been executed by Ermann & Cahn on the condition expressed in the deed of Ermann & Gahn, vendors, to the Pecot Sugar Company.
If this firm had foreclosed, they would have been bound by their warranty, and would not have been heard to deduct mortgages from the purchase price, which they had expressly guarantied the vendees would not be called upon to pay, They must be held bound by them deed and by their warranty.
One cannot be a guarantor and at the same time buy up the claims against which he warranted, and compel his vendee to pay the very claims against which it was the intention that his warranty should stand.
This rule of law bears upon title as well as upon mortgages. In buying fractional interest in the property owned prior to the sale under which he holds, and which were included in the sale by Ermann & Cahn to the Pecot Sugar Company, he (Pharr) cannot urge his purchase as affecting the rights of the vendee who holds from its vendors and Ermann & Cahn,. who are also his (Pharr’s) vendors, under whom he holds.
It is settled by repeated decisions. The transferee succeeds to the transferror, with rights no greater or no less. Wheeler & Winter v. McBain et al., 43 La. Ann. 859, 9 South. 495; Talbert v. Sutherlin, 49 La. Ann. 1393, 22 South. 762; Brashear v. Cooperage Co., 50 La. Ann. 587, 23 South. 540.
Defendant’s contention further is that plaintiff, a creditor, is without right to champion the cause of his debtor, the Pecot Sugar Company. He would not have this right if the debtor had sought by proper methods to have the avails of his property distributed. In the absence on the part of this corporation to that end, we think Hardy, creditor, has the right to claim the rank that he is entitled to as a mortgage creditor, and to oppose the claims of an adjudicatee who seeks to prevent him from collecting the amount due him.
“The vendor owes a guaranty not only to the buyer, but to all those who hold under him. Thus, T sell an immovable; you resell it to Paul. I owe the guarantee not only to you, but again to Paul, your purchaser.’ ” Baudry de la Cantinerie, p. 331.
The utterance of the commentator puts into concrete shape the thought that one must be held as he binds himself. Here the guaranty extends from Ermann & Cahn to the purchaser, Capt. Pharr, and each is bound by the warranty clause.
We have given to the issue growing out of the warranty pleaded by way of estoppel our most careful attention.
We have found no escape from the principle, which no one will deny, that the transferee succeeds to the transferror, and accepts the right burdened with its liability.
We have been impressed by defendant’s contention that he had sought to prove the *363 personnel of the Peeot Sugar Company, Limited, and that those who hold all the stock therein had themselves been owners in indivisión of the property, and on a prior occasion had transferred it to Ermann & Cahn. This, defendant contends, would have shown that as individuals they had sold the property to Ermann & Cahn at a time when the same prior incumbrances bore upon it; that afterwards they organized a corporation where stock was held by them alone, and that Ermann & Cahn sold to the corporation the very property which they acquired from these individuals; and that these incumbrances affected and followed it through these changes of title. Had the evidence been heard, says the defendant, it would have destroyed all pretense of the warranty which the plaintiff now claims.
This testimony, it seems, was excluded.
The judge of the district court, in his ruling excluding this testimony, says that the Pecot Sugar Company was formed, and that the Pecot heirs sold this property to the corporation, on March 1,1894. P. A. Coudroy owned a mortgage against one of the heirs of his widow and afterward became the owner of one-half of it as a community debt.
The record shows that the property had been mortgaged to Eallon, who foreclosed, and at the sale it was bid in by Ermann & Cahn. In 1896 the Pecot Sugar Company bought from the former.
The purpose of defendant in offering the testimony above referred to was, it seems, to show certain asserted equities between vendor and vendee at the time. If there is any other admissible testimony than that admitted to prove the equities, our attentive reading has not discovered it. We have not found a way to hold that the prior owners could, on oral testimony, change the warranty clause of the deed, by Ermann & Cahn to the Peeot Sugar Company.
The elaborate brief has not convinced us that there is any further admissible testimony on the subject. If there is, it should! unquestionably be heard.
No application has been made to remand. On the contrary, we are informed by the brief that it was to make it responsive to the argument proposed by the plaintiff and accepted by the district court. “It waives certain considerations that the defendant might urge; but it was deemed useless to proceed; further than was needed to make the attack actually and finally made by the plaintiff,” to' copy from the brief.
Prom this point of view we have passed upon the issues as they presented themselves-in the record.
We realize that the points involved are important, particularly as relates to the warranty clause, and, although we have given our best attention, we are quite willing to' pursue the inquiry further should it thereafter be shown that there is ground therefor.
For reasons assigned, the judgment is affirmed.