AYRES, Judge.
This is an action for a partition by licita-ción of a described 40-acre tract of land wherein it is alleged plaintiffs and defendants own the tract in various denominated fractional interests. Defendants, Mrs. Pearl Butler Camp, Raymond E. Butler, and Mrs. Nerrine Butler Bumgardner, assert ownership of the property (1) by deed from George Washington Butler and Mrs. Tennessee Viola Butler to Floyd E. Butler, now deceased but formerly husband of Mrs. Camp, with whom he then lived in community, and father of their children, Raymond E. Butler and Mrs. Nerrine Butler Bumgardner, and (2) by prescription of 10 and 30 years. Defendants additionally plead estoppel against plaintiffs’ assertion of any interest in the property.
From a judgment decreeing the property to be owned in indivisión by plaintiffs and defendants and ordering it sold to effect a partition, defendants prosecute this appeal.
Defendants assign as error the action of the trial court in failing to sustain any of the defenses urged and particularly by holding in effect that a sale by an heir of “succession rights” conveys to the purchaser property previously alienated by the vendors’ ancestors, and that the heirs and assigns are not affected by their ancestors’ unrecorded act of sale.
Plaintiffs, H. E. Butler and Vera Butler, are the children and sole heirs of Ivy Earl Butler who died November 28, 1965. Mrs. Pearl Butler Camp was the surviving wid-of of Floyd E. Butler who died December 13, 1927, leaving three children of their marriage, namely: Raymond E. Butler, Mrs. Nerrine Butler Bumgardner, and Eve Eloise Butler Mashaws. The latter died in 1943 without issue, leaving, as her sole heirs, her mother, brother, and sister.
Ivy Earl Butler and Floyd E. Butler were two of the seventeen children of George Washington Butler who died January 3, 1922, and Mrs. Tennessee Viola Butler who died March 27, 1926. Eight of the children died without issue and only one now survives, namely, Mrs. Ennie Lucille Butler Lyons, who disclaimed any interest in the property involved and was dismissed as a party to this suit.
Defendants Raymond E. Butler and Mrs. Nerrine Butler Bumgardner accepted the succession of their father as well as that of their grandparents, and plaintiffs accepted the succession of their father who had previously accepted the succession of his parents, plaintiffs’ grandparents.
*215 The record reflects these additional facts: On February 8, 1919, George Washington Butler and Mrs. Tennessee Viola Butler sold and delivered to Floyd E. Butler, husband of Mrs. Pearl Butler, with whom he, as heretofore stated, was living in community, the property with which we are now concerned. This deed, however, was not filed for record until April 2, 1931. In the meantime, during 1926 and 1927, plaintiff H. E. Butler acquired, from some of the heirs, various interests in his grandparents’ succession, which interests were generally described in the various instruments, with slight variations in the language employed, as:
“All of the Appearer’s right, title and interest in and to all property, both real and personal, belonging to the succession of George W. Butler and Mrs. Tennessee V. Butler, deceased, the intention herein being to convey unto the said H. E. Butler each and every interest of every nature and kind whatsoever inherited by the said appearer in the property, both real and personal, of the above succession.”
Plaintiffs’ theory of the case is that the deed from George Washington Butler and Mrs. Tennessee Viola Butler to Floyd E. Butler was subject to the various aliena-tions of interests made in their successions by the heirs thereto to plaintiff H. E. Butler and whose recordations primed that of the deed. It may be noted that no attack whatever is made upon the deed itself.
The instruments by which plaintiff H. E. Butler acquired the interests in his grandparents’ succession were corrected and reformed by judgment dated May 17, 1956, in a proceeding to which defendants were not made parties. At the time, the deed of Floyd E. Butler had been of record for more than 25 years.
When one purchases succession rights, he acquires only such things as belong to the succession. Each of the seven purported conveyances executed during the period following the deaths of George Washington Butler and of Mrs. Tennessee Viola Butler and prior to the recordation of the deed to Floyd E. Butler conveyed only “succession rights.” Consequently, the property theretofore conveyed to Floyd E. Butler could not form a part of their successions. This principle is recognized in LSA-C.C. Art. 2513 which provides:
“But if the thing sold be succession rights, the eviction which the buyer might suffer from any particular thing found among the property of the succession, does not give rise to the warranty, because in this case the thing sold is only the succession right, which includes only such things as belong really to the succession.” (Emphasis supplied.)
That the deed was not timely filed for record is of no consequence for the lack of registry of a sale of immovable property cannot be pleaded between the parties, their heirs or assigns. LSA-C.C. Art. 2442; Porterfield v. Parker, 189 La. 720, 180 So. 498 (1938); Hardy v. Pecot, 113 La. 350, 36 So. 992, 996 (1904); Haggard v. Rushing, 76 So.2d 52 (La.App., 2d Cir. 1954).
Heirs who have accepted a succession are bound by the same warranties and obligations as their ancestor and are thereby estopped from claiming property to which the ancestor is bound in warranty to another. Those who sold their interests in the successions to plaintiff accepted the successions, for it is declared that:
“All those acts of ownership, which the person called to the succession can only do in quality of heir, suppose necessarily his acceptance, for to act as owner is to make himself heir.” LSA-C.C. Art. 994.
And:
“The donation, sale or assignment, which one of the coheirs makes of rights of inheritance, either to a stranger or to his coheirs, is considered to be, on his part, an acceptance of the inheritance.” LSA-C.C. Art. 1002.
*216 The theory that an heir is bound as his ancestor, with respect to warranty, is predicated upon specific provisions of the Revised Civil Code. For instance, it is declared in LSA-C.C. Art. 1013:
“The effect of the simple acceptance of the succession, whether express or tacit, is such, that when made by an heir of age, it binds him to the payment of all debts of the succession, not only out of the effects which have fallen to him from the succession, but even personally, and out of his own property, as if he had himself contracted the debts or as if he was the deceased himself; unless, before acting as heir, he make a true and faithful inventory of the effects of the succession, as here above established, or has taken the benefit treated of hereafter”;
and in LSA-C.C. Art. 1423:
“The heirs by the fact alone of the simple acceptance of a succession left them, contract the obligation to discharge all the debts of such succession, to whatever sum they may amount, though they far exceed the value of the effects composing it”;
and in LSA-C.C. Art. 2008:
“Heritable obligations and stipulations give to and impose upon heirs, assigns, and other representatives, the same duties and rights that the original parties had and were liable to, except that beneficiary heirs can only be liable to the amount of the succession.”
These provisions have been given uniform application.
The principles of law involved here are clearly set forth on rehearing in Griffing v. Taft, 151 La. 442, 91 So. 832, 836-837 (1922). There it was stated:
“The institution of a suit claiming title to property by inheritance from a deceased person is an unconditional acceptance of his succession. Rev.Civ.Code, art. 988; * * *. An heir who manifests an intention of accepting the succession unconditionally — that is, without the benefit of inventory — by doing an act which he would have no right to do except as an unconditional heir (Rev.Civ.Code, art. 988), makes himself liable for the obligations of the deceased person whose succession he has thus accepted. Rev.Civ. Code, arts. 1013, 1423. Therefore the plaintiff in a suit claiming title to property by inheritance from a deceased person, and thereby manifesting the intention of accepting unconditionally the succession of the deceased person, has no right of action to recover the property if his deceased ancestor, in disposing of the property, obligated himself to warrant and defend the title. * * *.
“In Walker v. Fort [3 La. 535], it was said:
“ ‘The heir is bound by the warranty of the person, whose inheritance he accepts.’
“In Stokes v. Shackleford [12 La. 170], it was said:
“ ‘The heir cannot claim against the warranty of his ancestor, but is estop-ped by it from asserting title, although the title never vested until the ancestor’s death.
“ ‘If the vendor sells without title at the time of sale, but acquires title after-wards, it will accrue to the benefit of the vendee.
“ ‘The obligation of warranty descends to the heir of the vendor, and one of its first objects is, the buyer’s peaceable possession of'the thing sold. In this respect, the obligation is indivisible, although in regard to damages consequent on eviction, each heir may only be bound for his virile share.’
“In Smith v. Elliot [9 Rob. 3], it was said:
“ ‘The obligation not to disturb, and even to maintain the purchaser in the quiet enjoyment of the thing sold, is one to which the plaintiff succeeded on accepting the estate of the vendor as heir or coheir. It is an indivisible ob *217 ligation so far as it repels the coheir who seeks to disturb the title of the purchaser.’
“In Gusman v. Berryman [Man.Unrep. Cas. 199], Mr. Justice White, late Chief Justice of the Supreme Court of the United States, said, referring to the plaintiff in the case:
“ ‘Could he be successful in ousting his mother, he and his coheirs would be her warrantors, and hence the doctrine “Quem de evictione tenet actio eundem agentem repellet exceptio” is fatal to his pretensions. He claims that he has a new title. Grant it. His new title comes from his coheirs, and he cannot undo as an actor that which he would be compelled to make good as a war-rantor. Even did he and his coheirs, and he through them, have a title emanating from a different source than their father, they could not be heard under such cicumstances to destroy the very right they are bound to maintain.’
“In McQueen v. Sandel [15 La.Ann. 140], it was said:
“ ‘Where the averments in a petition amount to an acceptance of a succession, the plaintiff is estopped from contesting a valid title derived from the person to whom he succeeds; he is the warrantor of the title.’
“In Sevier v. Gordon [29 La.Ann. 440], it was said:
“ ‘Heirs who, when they attain majority, sue for a partition of the property of the succession, and enter into its possession, thereby accept the succession purely and simply. They cease to be beneficiary heirs, and become personally bound for the debts of the succession.’
“In McCall v. Irion [41 La.Ann. 1126, 6 So. 845], it was said:
“ ‘A party suing in virtue of her right as simple heir, for property that has descended to her as an inheritance, occupies the exact attitude before the court as would the ancestor himself, as plaintiff.’
“In Cochran v. Gulf Refining Co. [139 La. 1010, 72 So. 718], where the plaintiffs sued to annul a contract made by their mother after their father’s death, purporting to extend the term of a mineral lease on community property, it was said:
“ ‘Pretermitting the question whether the widow, as owner of one half of the land and usufructuary of the other half, could bind the co-owners by her contract extending the term of the lease, she bound herself by that contract; and, by accepting her succession unconditionally and partitioning the land that was subject to the lease, which she was bound to respect, her heirs assumed her obligations with respect to the land, and were thereby bound to recognke the contract of lease. See R.C.C. 1013.’
******
“It is argued by counsel for plaintiffs that, when they accepted the succession of their father, by bringing this suit, they were not aware that he had undertaken to dispose of the property and had obligated himself to warrant and defend the title. The argument is founded upon the fact that the deed was not recorded in the parish of Franklin, in which the land is located. The deed, however, was recorded in the parish of Tensas, in which the land was then embraced. Besides, the warranty clause in the deed obligated the vendor, without registry, and the heirs who have accepted his succession unconditionally have assumed the obligation, whether they voere or were not aware of it when they accepted the succession. Heirs claiming by inheritance, are not in the situation of third parties. It was said in Gusman v. Berryman, supra:
“ ‘The plaintiff and his coheirs are not third persons, nor is the community between the plaintiff and his wife a third person quoad the plaintiff himself, the head of and master of the com *218 munity. A title good without registry as to the head of the community is likewise good as to the community.’ ” (Emphasis supplied.)
This court, in Shell v. Greer, 171 So.2d 672 (La.App., 2d Cir. 1965), was confronted with a situation where defendant’s father had sold to plaintiff a described 40 acres of land by deed whose recordation was delayed, for approximately 15 years, until the vendor had died and his heirs had been placed in possession and partitioned his estate among themselves. In the partition the 40 acres involved was allotted to the defendant. There, we pointed out:
“Mrs. Greer occupies the same legal position as her father insofar as this property is concerned, and can claim no better right or title to the land than could have her deceased ancestor. Since her father had sold the property to plaintiff and had warranted the title, he would have been precluded from questioning plaintiff’s title. Mrs. Greer, having accepted her father’s succession, is bound by her father’s warranty and is likewise precluded from claiming title against plaintiff. See Griffing v. Taft (1922), 151 La. 442, 91 So. 832.
“It is argued that the above rule of law should not prevail in the instant case because Shell had delayed some 15 years in recording his deed, causing defendant and the other heirs to proceed in ignorance of plaintiff’s ownership. This argument was advanced in Griffing v. Taft, supra, but the court held that the warranty clause in the deed obligated the vendor, without registry, and the heirs who have accepted his succession unconditionally have assumed the obligation whether they were or were not aware of it when they accepted the succession. The court also held heirs claiming by inheritance are not in the situation of third parties.
“We think the holding in the above case is clearly applicable to the present situation and we conclude defendant herein is bound by her father’s warranty and can claim nothing against plaintiff by virtue of the judgment of possession and voluntary act of partition.” (Emphasis supplied.)
Appropriate, also, is the observation made in Arnett v. Marshall, 210 La. 932, 28 So.2d 665, 669 (1946):
“Having accepted unconditionally the succession of Mrs. Sale, defendant became liable for the debts and obligations of that succession. Among those obligations was Mrs. Sale’s warranty of title to the 240 acre tract (including the 60 acres now under consideration) conveyed to Charles D. Arnett and Amanda H. Arnett, this plaintiff’s father and mother. By that warranty Mrs. Sale bound herself to defend the title to all of the property and to maintain the vendees in peaceable possession. Certainly Mrs. Sale, if she were alive, could not recover the 60 acres. Neither can this defendant; she stands in the same position as Mrs. Sale, having accepted unconditionally her succession and thereby having assumed her obligation of warranty.”
Thus, having unconditionally accepted the succession of their father, Ivy Earl Butler, plaintiffs H. E. Butler and Vera Butler are bound by their father’s obligations, one of which was the obligation created by his acceptance of his father’s and mother’s successions, to maintain their vendee, Floyd E. Butler, his heirs, and assigns in peaceable possession of the property sold and to which they warranted title.
This rule of law extends to defendant Mrs. Ennie Lee Butler Friend Saulnaures, who succeeded to the rights and obligations of her father, James S. Butler, Sr., upon his death in 1942, and who, by the acceptance of the succession of his father and mother, George Washington Butler and Mrs. Tennessee Viola Butler, warranted the title of the property conveyed by his father and mother to Floyd E. Butler.
The obligation of the heirs in accepting their ancestors’ succession to main *219 tain their ancestors’ vendees in peaceful possession of the property sold is indivisible. It was early declared in Smith v. Elliot, 9 Rob. 3 (1844), that, under similar circumstances :
“ * * * the plaintiff is hound to warrant the title of the defendant derived from Matilda Smith, whose heir he is. The obligation not to disturb, and even to maintain the purchaser in the quiet enjoyment of the thing sold, is one to which the plaintiff succeeded on accepting the estate of the vendor as heir or co-heir. It is an indivisible obligation so far as it repels the co-heir who seeks to disturb the title of the purchaser. It forms, technically speaking, the exception of warranty of the civil law.”
In Soule v. West, 185 La. 655, 170 So. 26 (1936), plaintiffs asserted title as heirs of their mother who had inherited an interest from a predeceased brother. The court held that the obligation to maintain the vendee in peaceful possession is an indivisible one and as plaintiffs’ mother could have asserted no claim to the property, neither could the plaintiffs. The rule cannot be thwarted nor circumvented by the coheirs conveying interests inherited from one to another. Boyet v. Perryman, 240 La. 339, 123 So.2d 79 (1960).
No benefit to appellees arises from the delay in recordation of the deed to Floyd E. Butler. LSA-C.C. Art. 2442 provides:
“The sale of any immovable made under private signature, shall have effect against the creditors of the parties, and against third persons in general, only from the day such sale was registered according to law, and the actual delivery of the thing sold took place.
“But this defect of registering shall not he pleaded between the parties who shall have contracted in such act, their heirs or assigns, who are as effectually hound by a sale made under private signature, as if it were by an authentic act.” (Emphasis supplied.)
Thus, the conclusion is inescapable that appellees are not third parties and are not protected by the law pertaining to registry.
The clear result of the application of the well-settled rules of estoppel by warranty is to bar appellees absolutely from successfully claiming any interest in the property which George Washington Butler and Mrs. Tennessee Viola Butler conveyed by warranty deed to Floyd E. Butler, and we so hold.
If it could be said the deed to Floyd E. Butler did not for some reason convey title to the property, the pleas of 10 and 30 years’ acquisitive prescription would be applicable. The vendee took actual corporeal possession of the property, built a residence thereon, and occupied it as a home for a number of years. This possession continued through his widow and heirs without interruption or disturbance for a period exceeding 30 years, when H. E. Butler, in 1955 or 1956, objected to the cutting of timber on the tract. The vendee, his widow, and heirs have possessed the property, openly and notoriously, as full owners under a just title, regular and valid on its face, and in good faith.
We conclude, for the above-stated reasons, that defendants are the owners of the property. As surviving widow, Mrs. Camp owns, in her own right, an undivided one-half interest. On the death of one of the three children she inherited one-fourth of that child’s one-sixth interest; the two surviving children, three-fourths of that interest (LSA-C.C. Arts. 903, 904, and 911).
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed that the demands of plaintiffs, H. E. Butler and Vera Butler, be and they are hereby, rejected and that defendants, Mrs. Pearl Butler Camp, Raymond E. Butler, and Mrs. Nerrine Butler Bumgardner, be and they are hereby, recognized and decreed the owners, in indivisión, of the property describ *220 ed as the NW (4 of the SW )4> Sec. 2, T. 17 N., R. 1 W., Louisana meridian, Jackson Parish, Louisiana, with all the improvements thereon and appurtenances thereunto belonging, in the proportion of 1%4 to Mrs. Pearl Butler Camp and Wis each to Raymond E. Butler and Mrs. Ner-rine Butler Bumgardner.
All costs, including the cost of this appeal, are assessed against plaintiffs-appellees.
Reversed and rendered.